UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

ANDRES RAMIREZ,

    Plaintiff,

v.

NCL (BAHAMAS) LTD., d/b/a
NORWEGIAN CRUISE LINE,

    Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, ANDRES RAMIREZ, by and through his undersigned counsel and pursuant to the Federal Rules of Civil Procedure, hereby files this Complaint and Demand for Jury Trial against Defendant, NCL (BAHAMAS) LTD., d/b/a NORWEGIAN CRUISE LINE, and alleges:

**JURISDICTION AND VENUE**

1. This is an action for negligence arising from an injury that occurred on the cruise ship *M/V NORWEGIAN ESCAPE*, a vessel which was and is owned and operated by Defendant, NCL (BAHAMAS) LTD. d/b/a NORWEGIAN CRUISE LINE ("NORWEGIAN").

2. This action seeks damages *in excess* of seventy-five thousand dollars ($75,000.00).

3. This matter arises out of a maritime and admiralty claim and is controlled by the federal general maritime law of the United States. 28 U.S.C. § 1333.

4. Plaintiff also asserts all claims arising and relating to Florida state law under the Savings to Suitors Clause of 28 U.S.C. § 1333(1).

5. Current applicable law holds that venue is proper in this Court, pursuant to the passenger ticket issued by Defendant that contains a venue selection clause requiring all disputes arising out of and in connection with the subject cruise be litigated in the United States District Court for the Southern District of Florida, Miami Division. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S. Ct. 1522 (1991); *Leslie v. Carnival Corp.*, 22 So. 3d 567 (Fla. 3d DCA 2009).

6. At all material times, Plaintiff, ANDRES RAMIREZ ("MR. RAMIREZ"), was and is a citizen of the United States, and at all material times was and is *sui juris*.

7. This Court has personal jurisdiction over NORWEGIAN because Defendant has, at all times relevant to this cause of action, through its agents, officers, distributors, and/or representatives:

    a. Held its principal place of business in Miami-Dade County, Florida;

    b. Operated, conducted, engaged in, and/or carried on a business venture in Florida and has an office in Florida;

    c. Used, possessed, or held a mortgage or other lien on real property within Florida;

    d. Engaged in substantial and not isolated activities within Florida by maintaining stores, offices, employees, and/or registered agents in Florida, selling products in Florida, advertising products in Florida, and/or entering into contracts in Florida;

    e. Pursuant to its ticket contract, Defendant submits itself to the jurisdiction of this Court.

8. That all times material hereto, the Defendant, NORWEGIAN, was and is a foreign corporation, with its principal place of business in Miami-Dade County, Florida, and was and is a business entity and common carrier engaged in the passenger cruise business.

**FACTUAL ALLEGATIONS**

9. On or about December 31, 2019, the Plaintiff, ANDRES RAMIREZ, was lawfully and properly a fare-paying passenger and business invitee on board the *M/V NORWEGIAN ESCAPE*.

10. On said date, MR. RAMIREZ was severely scalded by hot water from his cabin shower.

11. Plaintiff's cabin shower controls were designed so that the temperature was "preset" to a certain level and then would remain at that level until the preset was changed. Then, when the shower is operated, the temperature is automatically regulated to the preset temperature.

12. Plaintiff was unfamiliar with the vessel's shower configuration which involved a preset temperature utilizing an adjuster on the right side for temperature control and an adjuster on the left for shower pressure.

13. The shower was preset to a comfortable, warm level when MR. RAMIREZ started his cruise on August 29, 2019 and he never changed or adjusted the shower's temperature prior to the incident described below. Neither did any person traveling with MR. RAMIREZ change or adjust the temperature in his cabin prior to the date of the subject incident.

14. On and before the date of the incident complained of, Plaintiff's shower had been preset to a temperature that was reasonably warm, but not overly hot. Plaintiff had been on the cruise for approximately three days and the temperature of his shower remained unchanged during that time.

15. However, on the date of the accident in question, MR. RAMIREZ had traveled to visit Bridgetown, Barbados, one of the ship's foreign ports of call.

16. Unknown to Plaintiff, while he was shoreside a cabin attendant who cleaned his cabin and shower adjusted the water temperature from warm to fully hot on the shower's preset.

Following the cleaning process, the cabin attendant negligently failed to return the shower temperature to its preset warm temperature and left the temperature on its hottest setting.

17. When Plaintiff began to shower after his visit shoreside, he checked the temperature of the shower and it seemed to be its normal, warm setting. However, after Plaintiff was fully in the shower, the water suddenly and unexpectedly became superheated, severely burning MR. RAMIREZ.

18. In fact, the water was so hot that it caused MR. RAMIREZ to suffer a seizure. He had a prior history of epilepsy, but his condition was under control with medication. He had suffered no incidents since August of 2019 when his medication was adjusted by his treating doctor.

19. The super-heated temperature of the water in MR. RAMIREZ's cabin was unreasonably dangerous. The water that struck MR. RAMIREZ caused him third degree burns, requiring skin grafts and resulting in severe scarring.

20. NORWEGIAN knew or in the exercise of reasonable care should have known that the water was unreasonably hot. In fact, Defendant placed signage near the shower indicating that the guests should "please test temperature."

21. The cabin attendant's action of adjusting the shower's water to a dangerously hot setting and then leaving it at that setting negligently created a burning hazard to passengers, including Plaintiff.

22. The cabin attendant should have warned MR. RAMIREZ that the shower temperature had been adjusted to a different, and unreasonably hot level prior to Plaintiff using the shower upon his return from shore.

23. Defendant, NORWEGIAN, inspected, maintained, cleaned, and approved the ship for

occupancy by passengers, including Plaintiff, before and after the ship was in service.

24. Additionally, Defendant, NORWEGIAN, owned the vessel *M/V NORWEGIAN ESCAPE* and was familiar with its water distribution system, including the fact that water in the cabin showers could become dangerously hot, and that it was therefore foreseeable that this dangerous condition could cause injury to passengers, including Plaintiff.

25. Defendant, NORWEGIAN, knew or should have known that the water in the shower of Plaintiff's cabin could become dangerously hot.

26. NORWEGIAN employed a dangerous method of operation by superheating the water delivered to passenger cabins at a temperature capable of causing third degree burns when utilized in a foreseeable manner by its passengers.

27. NORWEGIAN's warning sign that the passengers should "please test temperature" was inadequate to notify its passengers that the water was superheated to an unreasonable level and therefore capable of causing third degree burns.

28. Defendant, NORWEGIAN, failed to adequately warn Plaintiff of the dangers of the scalding hot water in the cabin bathroom shower prior to his injuries.

29. As a result of the direct negligence of NORWEGIAN through its cabin attendant, Plaintiff suffered severe third-degree burns over his lower body and required extensive medical treatment, among other injuries.

30. As a result of NORWEGIAN'S negligent operation of the vessel, including delivering unreasonably hot temperatures to passenger cabins, Plaintiff suffered severe third-degree burns over his lower body and required extensive medical treatment, among other injuries.

31. As a result of NORWEGIAN's negligent failure to warn MR. RAMIREZ of the shower's unreasonably hot temperatures, Plaintiff suffered severe third-degree burns over his lower

body and required extensive medical treatment, among other injuries.

## COUNT I – NEGLIGENCE

Plaintiff realleges and hereby incorporates paragraphs 1 through 31, and further alleges:

32. At all times material hereto, the Defendant, NORWEGIAN, owed a duty to Plaintiff to use reasonable care under the circumstances in maintaining the premises of the *M/V NORWEGIAN ESCAPE* in a reasonably safe condition and operating the vessel in a reasonably safe manner.

33. At all times material hereto, the Defendant, NORWEGIAN, owed a duty to Plaintiff to warn of any dangerous conditions that Plaintiff would encounter during his normal usage of the vessel. *Samuelov v. Carnival Cruise Lines, Inc.*, 870 So. 2d 853, 856 (Fla. 3d DCA 2003) (property owner has a duty to warn of dangerous conditions that the owner has reason to believe its business invitees will encounter regardless of open and obvious nature of the condition).

34. Defendant knew or should have known that the water in Plaintiff's cabin bathroom could become dangerously hot and scald passengers, through its regular maintenance and routine inspection of its cabins.

35. Further, Defendant's direct actions in superheating water intended for delivery to passenger cabins was a negligent method of operation.

36. Defendant knew or should have known of the dangerous and unsafe water temperature because it existed for a sufficient amount of time, and Defendant failed to take reasonable steps to correct the hazards or to warn Plaintiff of the hazards.

37. Defendant was on notice of the unreasonably hot water first, by creating the condition in its design and maintenance of the vessel and second, as evidenced by the inadequate

signage placed near the shower notifying passengers to "please test temperature."

38. Defendant breached its duty owed to Plaintiff by committing one or more of the following acts and/or omissions, and/or was negligent in the operation, maintenance, and control of the *M/V NORWEGIAN ESCAPE* in the following respects:

    a. Failing to exercise reasonable care for the safety of its passengers, including Plaintiff;

    b. Creating and/or negligently designing the hot water system to the cabin showers;

    c. Negligently adjusting the hot water delivered to passenger cabins to an unreasonable and dangerously hot temperature;

    d. Negligently changing the pre-set water temperature in the cabin shower to the full hot temperature during cleaning, and then no resetting the temperature to its prior, warm setting;

    e. Failing to warn MR. RAMIREZ that the cabin attendant changed the pre-set water temperature in the cabin shower to the full hot temperature during cleaning, and then did not reset the temperature to its prior, warm setting;

    f. Failing to warn MR. RAMIREZ that the water temperature in the cabin shower was heated to an unreasonable and dangerously hot temperature that could cause burn injuries;

    g. Failing to properly inspect and/or maintain reasonably safe water temperatures for use by its passengers in cabin showers, including Plaintiff;

    h. Failing to instruct passengers, including Plaintiff, in the use of the pre-set temperature lever on one side of the shower and the water volume lever on the

       opposite side, which is a non-standard design in the United States;

    i. Negligently causing the water temperature to be too hot for passengers' normal usage;

    j. Allowing a dangerous condition to exist notwithstanding prior incidents involving similar burns in cabin bathrooms on the *M/V NORWEGIAN ESCAPE* and other vessels in Defendant's fleet of cruise ships; and

    k. Other acts of fault and negligence that will be proven at trial.

39. Upon information and belief, and based on the unreasonably dangerous condition of the shower water system, several passengers and/or crew had been scalded in cabin showers prior to the incident involving Plaintiff, in similar cabin lavatories throughout Defendant's fleet of vessels, and Defendant and/or its crew members were well aware of this information.

40. The dangerous conditions alleged above existed for a sufficient amount of time that Defendant knew or should have known of the danger and should have taken corrective measures to remedy the dangerous conditions in a timely manner. Defendant was on actual or constructive notice of the presence of said dangerous conditions.

41. Defendant was also on constructive notice of the unsafe condition in that it chose an unsafe design of the water system in question, including a design that caused a burning hazard for passengers, which it knew or should have known would inevitably happen in the normal course of usage of the vessel's lavatory facilities. Said negligent selection and design make Defendant liable for actually creating the unreasonably dangerous condition that caused Plaintiff's injuries.

42. Defendant, at all times material hereto, had a non-delegable duty as a ship owner to comply

with the International Safety Management (ISM) Code, which requires vessel operators to establish safeguards against identified risks aboard vessels.

43. Due to its negligence, Defendant directly and proximately caused injuries and damages to Plaintiff, which are continuing and permanent in nature, as follows:

    a. Plaintiff sustained and will continue to suffer bodily injuries and mental pain and suffering, disability, disfigurement, physical impairment, inconvenience, loss of capacity for the enjoyment of life, lost wages, and diminished earning capacity;

    b. Plaintiff has incurred medical, hospital, nursing, therapy, and pharmaceutical expenses and will continue to incur such expenses as long as his condition continues; and

    c. Plaintiff may suffer aggravation of a pre-existing condition.

44. All conditions precedent to filing this lawsuit have been complied with or waived.

**WHEREFORE**, Plaintiff, ANDRES RAMIREZ, demands judgment for damages against the Defendant, NCL (BAHAMAS) LTD. d/b/a NORWEGIAN CRUISE LINE, costs, interest, attorneys' fees, and demands a trial by jury, and such other and further relief as the Court deems just and proper, both in law and in equity.

BILLERA LAW
2201 NW Corporate Blvd., Suite 200
Boca Raton, FL 33431
Telephone: (561) 500-7777
Facsimile: (561) 500-7778
John@billeralaw.com
Jessica@billeralaw.com

By: **/s/ John F. Billera**
JOHN F. BILLERA, ESQ.
Florida Bar No.: 869041

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues so triable as a matter of law.

        Respectfully submitted,

        BILLERA LAW
*Attorneys for Plaintiff*
2201 NW Corporate Blvd., Suite 200
Boca Raton, FL 33431
Telephone: (561) 500-7777
Facsimile: (561) 500-7778
John@billeralaw.com
Jessica@billeralaw.com

By: ***/s/ John Billera***
      JOHN F. BILLERA, ESQ.
      Florida Bar No.: 869041